# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| LAWANNA COOPER, on behalf of her daughter, NJS, a minor,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | No. C15-2026-CJW<br><br>**MEMORANDUM OPINION AND ORDER** |

Plaintiff, Lawanna Cooper, on behalf of her minor child, a daughter, seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her daughter's application for Social Security supplemental security income benefits (SSI), under Title XVI of the Social Security Act, 42 U.S.C. § 401 *et seq.* (Act). Plaintiff contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that she was not disabled during the relevant period. For the reasons that follow, the Commissioner's decision is affirmed.

## I. BACKGROUND

The minor child was born in 2000, completed seven years of schooling, and attended special education. AR 212, 236, 272. Plaintiff filed the application for SSI on March 9, 2012, alleging a disability onset date of that same day. AR 109, 118. She contends that the child is disabled due to attention deficit hyperactivity disorder (ADHD), oppositional defiant disorder (ODD), and possibly a learning disorder. AR 23. Plaintiff's claims were denied initially and on reconsideration. AR 109, 118. She then requested a hearing before an Administrative Law Judge (ALJ). ALJ Eric Basse conducted a hearing

on September 4, 2013 (the Hearing) (AR 20-53), and issued a decision denying plaintiff's claim on December 24, 2013. AR 17.

Plaintiff sought review by the Appeals Council, which denied review on March 4, 2015, AR 1, leaving the ALJ's decision as the final decision of the Commissioner. On April 27, 2015, plaintiff filed a complaint (Doc. 3) in this court seeking review of the Commissioner's decision. On September 30, 2015, with the consent of the parties (Doc. 13), the Honorable Linda R. Reade transferred this case to a United States Magistrate Judge for final disposition and entry of judgment. The parties have now briefed the issues, and the matter is fully submitted.

## II. THE DISABILITY STANDARD FOR CHILDREN

The Social Security Act requires a child seeking SSI benefits to prove the following:

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i); see *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1151 (8th Cir. 2004).

In determining whether a claimant under the age of eighteen is disabled, the ALJ undertakes a sequential three-step evaluation. 20 C.F.R. § 416.924(a); see *England v. Astrue*, 490 F.3d 1017, 1019-20 (8th Cir. 2007); *Neal ex rel. Walker v. Barnhart,* 405 F.3d 685, 688-89 (8th Cir. 2005). First, the Commissioner determines whether a child is engaged in "substantial gainful activity." 20 C.F.R. § 416.924(a) & (b). If so, then the Commissioner will determine the child is not disabled and deny the claim. *Id.* If the child is not engaged in substantial gainful activity, then the Commissioner will determine whether the child's impairment, or combination of impairments, is "severe," meaning the

impairment causes more than minimal functional limitations. 20 C.F.R. § 416.924(a) & (c). If the impairment is not severe, then the child is not disabled and the claim is denied. *Id*. If the impairment is severe, then the Commissioner looks to see whether the impairment meets, medically equals, or functionally equals, an impairment listed in the Regulations, and whether the impairment has lasted or is expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.924(a) & (d). To be "functionally equivalent," the child's limitations must be at least equal in severity and duration to limitations associated with a listed impairment. 20 C.F.R. § 416.926.

The "functionally equivalent" analysis requires the Commissioner to analyze the following six "domains," which are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). The six domains are: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for [one]self; and, (vi) Health and physical well-being." *Id.*

A finding of functional equivalence will be made only if a child has "marked" limitations in two domains of functioning, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a); *see Moore v. Barnhart,* 413 F.3d 718, 722 (8th Cir. 2005). A "marked" limitation in a domain means the claimant's impairment interferes seriously with his/her ability to independently initiate, sustain, or complete activities. This may mean serious limitation exists in only one activity, "or when the interactive and cumulative effects of [the] impairment(s) limit several activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation also may mean "a limitation that is more than moderate" but "less than extreme.'" *Id.* The regulations point to standardized testing results as an indicator of whether a limitation is "marked," and contain other age-based criteria. *See id.*; *see also Scales v. Barnhart*, 363 F.3d 699, 703-04 (8th Cir. 2004).

An "extreme" limitation is the rating given to the "worst limitations," and occurs in a domain when a claimant's impairment interferes "very seriously" with his/her ability

3

to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation is "more than marked," but "does not necessarily mean a total lack or loss of ability to function." *Id*. Again, the regulations point to standardized testing scores and certain age-based criteria as indicators of whether a limitation is "extreme." *See id*.

The regulations provide detailed descriptions of the types of information that are relevant to consideration of each of the domains. See 20 C.F.R. § 416.926a(g)-(l). The ultimate "responsibility for deciding functional equivalence rests with the Administrative Law Judge or Appeals Council." 20 C.F.R. § 416.926a(n).

### III. THE ALJ'S DISABILITY DETERMINATION

In evaluating the child's claim, the ALJ followed the familiar five-step sequential evaluation process outlined in 20 C.F.R § 416.924a. AR 20-23. The ALJ found the claimant had not engaged in substantial gainful activity during the relevant time period. AR 23. The ALJ next found the claimant had one or more severe impairments, including ADHD and ODD. AR 23. The ALJ further found these impairments did not meet or equal the Listings of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. AR 23. The ALJ then assessed the child's functioning in the various domains for a school-age child, finding the claimant had:

* A less than marked limitation in acquiring and using information. AR 28-29;
* A less than marked limitation in attending and completing tasks. AR 29-30;
* A marked limitation in interacting and relating with others. AR 30-31;
* No limitation in moving about and manipulating objects. AR 31-32;
* A less than marked limitation in the ability to care for herself. AR 32-33; and
* No limitation in health and physical well-being. AR 33.

As the ALJ did not find an extreme limitation in any domain and found a marked limitation in only one domain, the ALJ determined that the child's condition did not functionally equal the Listings. As a result, the ALJ found the claimant was not disabled. AR 33.

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health &*

*Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Plaintiff argues the ALJ's decision is flawed for three reasons:

1. The ALJ failed to find that the minor child's combination of impairments medically equals Listing § 112.05D.

2. The ALJ failed to find that the minor child has an extreme limitation interacting and relating to others.

3. The ALJ failed to find that the minor child has a marked limitation in attending and completing tasks.

The court will address these three arguments separately below.

## VI. ANALYSIS

### A. *Plaintiff Has Failed To Meet Her Burden of Proving that the Claimant Equaled Listing 112.05(D)*

The ALJ concluded that the claimant's impairments did not meet or medically equal the requirements for any listed impairments. AR 23. The ALJ found that the claimant had two severe impairments: ADHD and ODD. AR 23. Plaintiff claims that the record requires an additional impairment – "either a learning disorder or an intellectual disability" – that equaled Listing 112.05(D) (Intellectual Disability).

Plaintiff has not shown that the claimant has a severe impairment of a learning disorder or intellectual disability. A medically determinable severe impairment "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.908. The claimant was never diagnosed with either an intellectual disability or a learning disorder during the relevant period, and thus, there was no medically acceptable clinical or laboratory diagnostic techniques that would establish these were medically determinable impairments. Bobbita Nag, M.D., the claimant's psychiatrist, observed the claimant's intelligence to be in the average range. AR 361, 363, 390-399, 410-411. Dr. Nag diagnosed her with "rule out borderline intellectual functioning" and recommended IQ testing because of her maturity, not her intellectual abilities. AR 390-391, 410-411, 474. Sunde Nesbit, Ph.D., subsequently performed the IQ testing, but did not diagnose the claimant with borderline intellectual functioning or any other intellectual disability. AR 474. Dr. Nesbit opined that the claimant's problems stemmed from behavior, rather than cognitive issues. AR 473. The claimant was never diagnosed with a learning disability during the relevant period. AR 475. Plaintiff has not shown that either a learning disability or intellectual disability were medically determinable impairments.

Similarly, plaintiff has not shown that the claimant had a severe impairment of either an intellectual disability or a learning disorder. A child's impairment is "severe" if it is more than a slight abnormality or causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). The Eighth Circuit Court of Appeals has said that "severity is not an onerous requirement for the claimant to meet . . . but it is also not a toothless standard, and [the Eighth Circuit Court of Appeals has] upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." *See Kirby,* 500 F.3d at 707. An impairment must last or be expected to last not less than twelve consecutive months to meet the statutory definition of disability. *Karlix v. Barnhart*, 457 F.3d 742, 746 (8th Cir. 2006) (quoting 42 U.S.C. § 423(d)(1)(A)).

A teacher of plaintiff opined in April 2012 that the claimant had an obvious, but not serious, problem learning new material and recalling and applying previously learned material. AR 252. Another teacher opined in May 2012 that with medication, the claimant was acquiring and using information at an age-appropriate level. AR 263. A third teacher noted in September 2013 that the claimant had only a slight problem in learning new material and recalling and applying previously learned material. AR 327. Plaintiff has not shown that either an intellectual disability or learning disorder were severe impairments that caused more than a slight limitation in the claimant's functional ability for twelve consecutive months. Although the ALJ found that the claimant's medically determinable impairments of ADHD and ODD caused more than a slight abnormality or minimal functional limitations, plaintiff has not shown that the claimant had an intellectual disability or learning disorder that likewise affected her abilities. AR 23.

Plaintiff has also failed to establish that such impairments medically equal Listing 112.05(D). The listings in Appendix 1 operate as a presumption of disability because they define impairments so severe that they would prevent a person, regardless of any other factors, from performing any gainful activity. *Sullivan v. Zebley*, 493 U.S. 521,

530 (1990). Before a claimant can be found to be disabled, per se, pursuant to a listing found in Appendix 1, she must prove that she meets or equals all of the specified medical criteria associated with that particular listing. *Id.,* at 530 (impairment does not meet a listing if it has only some of the medical criteria, no matter how severe). An impairment is "medically equivalent" to a Listing if the medical findings are at least equal in severity and duration to the listed findings. *Puckett v. Chater*, 100 F.3d 730, 733 (10th Cir. 1996).

The medical equivalence determination is based solely on medical findings. *Id.* (citing 20 C.F.R. § 404.1526). To satisfy Listing 112.05(D), plaintiff must show that the claimant had an intellectual disability characterized by significantly sub-average general intellectual functioning with deficits in adaptive functioning and a valid verbal, performance, or full scale IQ of 60 through 70, and a physical or other mental impairment imposing an additional and significant limitation of function. Plaintiff has not met her burden of proving the claimant met or equaled all of these requirements.

Plaintiff has not established that the claimant had significantly sub-average general intellectual functioning. Dr. Nesbit noted that although plaintiff's full-scale IQ score of 73 fell in the borderline impaired range, this was likely an underestimate of her true abilities. AR 469. Dr. Nesbit believed that the claimant's problems stemmed primarily from behavioral issues rather than a cognitive defect. AR 473. While her overall academic achievement was below average, the claimant appeared to have at least average intelligence in Dr. Nesbit's mental status examination. AR 466. Similarly, the claimant's psychiatrist, Dr. Nag, routinely assessed her intelligence as being in the average range. AR 361, 363, 390-398, 410-418. In 2012, the claimant's teacher showed she was performing at grade level since taking medication. AR 263. She was moved to the next grade. AR 398. The claimant reported improved grades in 2013. AR 25, 443. *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (if an impairment can be controlled

9

by treatment or medication, it cannot be considered disabling). Thus, the evidence does not establish "significantly sub-average" intelligence.

Similarly, plaintiff has not established that the claimant had deficits in adaptive functioning. The claimant was not diagnosed with an intellectual disability. Dr. Nag diagnosed her with "borderline intellectual functioning rule/out" and recommended IQ testing, not due to intelligence, but due to her maturity level. AR 390-391, 410-411. After administering an IQ test, Dr. Nesbit did not diagnose the claimant with borderline intellectual functioning or any other intellectual disability. AR 474. Dr. Nesbit believed the claimant may have a possible learning disability, but he also opined that her problems stemmed primarily from behavioral issues rather than a cognitive deficit. AR 473, 475. She was later diagnosed with a learning disorder, by history rather than by diagnostic techniques, after the adjudicated period ended. AR 7. Further, although a child does not need to have a formal diagnosis to satisfy Listing 112.05, the lack of a diagnosis is an inconsistency that may be considered. *Brown ex rel. TH v. Astrue*, No. 4:08CV0298-TCM, 2009 WL 2923062, at *10 (E.D. Mo. Sept. 8, 2009) (unpublished).

The evidence does not establish deficits in adaptive functioning sufficient to satisfy Listing 112.05(D). Indicators of adaptive functioning included childhood developmental milestones, as well as educational and social achievements. *Towns v. Colvin*, No. 1:13-CV-88-DDN, 2014 WL 2158410, at *7 (E.D. Mo. May 23, 2014) (unpublished). In *Towns,* the court found that the claimant did not suffer adaptive functioning deficits where he was functioning in the average range compared to his peers, was able to care for his daily living needs and communicate effectively, and was able to transition from classes and activities without difficulty. *Id*. In *Williams ex rel. D.W. v. Astrue*, the court found the claimant did not have the required adaptive functioning deficits where he took at least some general education classes, played football, liked school and teachers, and his ability to acquire and use information and attend and complete tasks improved. *Williams ex rel.*

*D.W. v. Astrue*, No. 11-1015, 2012 WL 1424420, at *14 (W.D. Ark. Apr. 2012) (unpublished).

In this case, the claimant's teacher noted that claimant had only a slight problem changing from one activity to another without being disruptive, and she had no problem caring for her own physical needs or personal hygiene. AR 328, 331. Another teacher noted claimant was functioning at an age-appropriate level with medication. AR 263-264, 268. The teacher found she had no problem with acquiring and using information or attending and completing tasks while taking medication. AR 263-264. Her grades improved to B's and C's. AR 443. She was moved to the next grade, played volleyball, and maintained friendships. AR 82, 329, 398. Thus, the record evidence does not support listing-level adaptive functioning deficits.

Plaintiff's reliance on the claimant's processing speed of 70 is misplaced. Although Listing 112.05(D) requires a verbal, performance, or full scale IQ of 60 through 70, the claimant had two performance IQ scores. Her perceptual reasoning was 79, and her processing speed was 70. AR 469. Thus, the average of her performance scores was over 70. Also, her verbal scores were 75 and 94. AR 469. Dr. Nesbit opined that the claimant's IQ score was an underestimate of her true abilities. AR 469. Thus, even though her lowest performance score was 70, this fact alone, combined with a lack of established significantly sub-average intelligence and deficits in adaptive functioning, is not sufficient to satisfy plaintiff's burden of proving the claimant medically equaled Listing 112.05(D).

Finally, the ALJ was not required to obtain additional medical expert testimony merely because the IQ testing was performed after the state agency medical consultants issued their opinions. Social Security Ruling ("SSR") 96-6p says that the ALJ must obtain an updated medical opinion from a medical expert when (1) the ALJ believes the evidence shows that a judgment of equivalence may be reasonable, or (2) the ALJ believes additional medical evidence received may change the state agency medical consultant's

findings. SSR 96-6p. Plaintiff argues that the IQ testing and findings from Dr. Nesbit, received after the state agency medical consultants' opinions, would have changed their opinions. As the ALJ noted, Dr. Nesbit's opinion showed moderate limitations, consistent with the state agency medical consultants' opinions. AR 28. The ALJ noted that the IQ testing showed plaintiff was in the borderline range of intelligence, although she had some strengths in the average range. AR 27. Dr. Nesbit believed that the claimant's IQ score was an underestimate of her true abilities and believed that her problems were behavioral, not cognitive. AR 469, 473. Thus, Dr. Nesbit's findings did not provide a basis to change the state agency medical consultant's opinions.

In sum, the ALJ properly found that the claimant's impairments did not meet or medically equal a listing. Plaintiff has failed to meet her burden of proving the claimant's impairments equaled Listing 112.05(D).

### B.     *The ALJ Properly Found that the Claimant Had Only a Marked, Not an Extreme, Limitation in Interacting and Relating to Others*

The ALJ found that the claimant had a marked limitation in the domain of interacting and relating to others. AR 31. An extreme limitation in a domain means that one's impairment interferes very seriously with one's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(1). A marked limitation means that the impairment seriously interferes with ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(1). In this domain, a school-age child, such as the claimant, should be able to develop lasting friendships, work in groups, understand another's point of view, be able to talk to people of all ages, and be able to speak in a manner that listeners can readily understand. 20 C.F.R. § 416.926a(i)(2)(iv).

Plaintiff has not shown that the claimant's impairments very seriously interfered with these activities. Plaintiff has failed to prove that the claimant had an extreme limitation in this domain. 20 C.F.R. § 416.926a(i)(3).

The state agency medical consultants found that the claimant had less than marked limitations in this domain. AR 92, 101. However, after reviewing the entire record, including evidence from after the state agency medical consultants issued their opinions, the ALJ gave the claimant the benefit of the doubt and found she had marked limitations in this area. AR 31. In doing so, the ALJ considered the claimant's defiant behavior, uncontrolled anger, and aggression toward others, including altercations with students and at home. AR 31. The ALJ also considered that the claimant's social functioning improved with medication. AR 31. When taking medication, she was more calm and responsive to adult direction. AR 25, 332. She began mixing with friends and participating on a volleyball team. AR 31. The claimant testified that she got along with the volleyball coach and had friends. AR 82. She told Dr. Nesbit that she felt connected to some of her teachers, and she enjoyed spending time with friends and playing volleyball and basketball. AR 465. The claimant's teacher noted she had no problem playing with other children or making and keeping friends, relating experiences and telling stories, using language appropriately, maintaining appropriate conversation, or using adequate vocabulary. AR 329. Her mental status examinations showed she was cooperative, calm, and articulate. AR 26, 390-391, 410-411, 452, 455, 466, 472. The record does not support extreme, or very serious, limitations in this area. The ALJ properly found, based on the record, that the claimant's impairments caused only marked, or serious, limitations in this area.

### C. The ALJ Properly Found that Plaintiff Had Less Than a Marked Limitation in Attending and Completing Tasks

The ALJ found that the claimant had less than marked limitations in the domain of attending and completing tasks. AR 30. A school-age child, like the claimant, should be able to focus attention to follow directions, complete assignments, concentrate on details, change activities or routine, stay on task, participate in group sports, read alone, complete

family chores, and complete a transition task. 20 C.F.R. § 416.926a(h)(2)(iv). Examples of difficulty in this domain include being easily startled or distracted; being slow to focus on or failing to complete activities of interest; repeatedly becoming side tracked from activities; being easily frustrated and giving up on tasks; requiring extra supervision to remain engaged; or being unable to complete assignments. 20 C.F.R. § 416.926a(h)(3). The evidence does not show marked limitations in this domain.

The claimant's sixth grade teacher thought she had no problem sustaining attention during play/sports activities and had only a slight problem paying attention when spoken to directly, focusing long enough to finish an assigned activity or task, and completing assignments accurately without careless mistakes. AR 328. Although the claimant was treated for poor attention and concentration, the claimant felt her concentration improved and was managed with medication. AR 363, 465. If an impairment can be controlled by treatment or medication, it cannot be considered disabling. *Buckner v. Astrue*, 646 F.3d 549, 557 (8th Cir. 2011); *Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007). Mental status examination showed she had normal and average concentration. AR 405, 452. Her ability to understand instructions and rules was average. AR 473-474. Importantly, Dr. Nesbit noted that the claimant's attention and concentration were strengths, not deficits. AR 473.

Plaintiff's reliance on the BASC score to support marked limitations in this domain is misplaced. Plaintiff provided the answers that formed the basis of this score. AR 466-467. Such subjective responses, which the ALJ properly discredited, are not sufficient to undermine the ALJ's decision.

Plaintiff has failed to establish that the claimant functionally equaled the listings. Specifically, she has not shown that the claimant had marked limitations in two domains or extreme limitations in one domain. Therefore, her assertion of error lacks merit.

## *VII. CONCLUSION*

For the reasons set forth herein, and without minimizing the seriousness of the minor child's impairments, the Court finds that the Commissioner's determination that plaintiff was not disabled is **affirmed**. Judgment shall be entered against plaintiff and in favor of the Commissioner.

**IT IS SO ORDERED** this 17th day of June, 2016.

_____
C.J. Williams
United States Magistrate Judge
Northern District of Iowa